LeadericK, J.,
delivered the opinion of the Court.
The bill in this case, was filed in the Chancery Court at Sevierville, 25th July, 1859, alleging that complainant, being about seventy years old, was induced, by the arts and contrivances of defendant, who was his son-in-law, to convey to him his tract of land in Sevier county, worth $4,000, for the price of $1,800; that complainant was weak in body and mind, had had domestic troubles, and had, for several days before the trade, been under the influence of liquor. The complainant alleges that the defendant “fraudulently took advantage of this state of facts to ovei’reach him, and deprive him of his property.”
The answer denies the charges in the bill, and alleges that the complainant proposed the trade to him; that he was in the full possession of his mental powers, made the contract voluntarily and understanding^, for a fair and sufficient consideration.
*641 The contract was reduced to writing by both the parties, and was executed on the 15th of September, 1853, nearly six years before the filing of the bill. It is witnessed by J. "Walker and C. Inman. Walker died before the institution of the suit, and the deposition of C. Inman has been taken in the cause.
The record is very voluminous — presenting, in more than a hundred depositions taken, much conflict in the opinions of the witnesses, as to the mental capacity of complainant at or about the time of the execution of the contract.
By the terms of the contract, respondent was to pay complainant $1,800 — $300 of which was to be paid in the fall of 1853; the balance to be paid in annual in-stalments of $200, except the last payment of $100. And the contract further stipulated, that said “Joseph is to make said Baker’s house his home, and he is there to be maintained during the lifetime of said Joseph Keeler, should he choose to remain there, free of charge.”
It is impracticable now, as well as unnecessary, to undertake an analysis of the testimony in the record, but we have given it a careful examination.
The complainant alleges, that he was persuaded to go to one John Walker’s, four or five miles from his home, to execute the contract, scarcely knowing, and not understanding, what he did, and was greatly affected by the influence of liquor, drank several days preceding the transaction. It is hardly alleged, and is not proven, that he was under the immediate influence of liquor when the contract was executed.
Charles Inman, the only surviving subscribing wit *642 ness to the contract, states that he saw nothing wrong in complainant’s mind; that if he was drinking he did not notice it, and that he signed the contract voluntarily.
John Catlett, the only other person living who was present at the signing of the contract, and who drew part of the notes given by respondent, states, that, so far as he could judge, complainant was as much in his right mind as he ever was — was perfectly sober, and entirely competent to transact said business; that complainant assigned, as a reason for selling his land to Baker, that all his children .had married and left, and he was unable to keep up the place himself. The trade was freely spoken of, and both parties seemed to act with entire willingness.
There is also much evidence in this record to show that complainant preferred to live with his daughter, the wife of the defendant, and repeatedly expressed his purpose to sell his land to the defendant, for some time before the contract was entered into.
There is also testimony in the record to show that complainant, after he had entered into the contract with defendant, frequently expressed regret that he had done so, and often manifested deep concern and distress that he had parted with his land; while, on the other hand, and at other times, from the date of the contract up to within a short time before the filing of the bill, he repeatedly expressed his satisfaction with the arrangement he had made.
While it cannot be held that, in order to avoid a contract, it is necessary to prove that the party seeking to be relieved from it was insane, or of unsound mind; *643 mere physical debility or the infirmities of old age, though they justly excite the vigilance of the courts, do not, without more, furnish sufficient reasons for avoiding a contract.
In this record, while we have the expression of opinion from many witnesses that complainant was not competent to transact important business, we think the weight of proof is that he had more than ordinary vigor of body and mind for his age, and that he perfectly comprehended the nature of the transaction with defendant, assigned a rational motive for it, and voluntarily and understandingly entered into the contract with him, and must be held to its performance.
In addition to the $1,800 to be paid to complainant, defendant also undertook to maintain complainant during his life, should he choose to remain at his house, free of .charge.
The complainant voluntarily left the house of defendant the day before the bill was filed; and, as far as this record discloses, without any sufficient cause.
Under these circumstances, we think the defendant should be charged with a' reasonable annual allowance to complainant, computed upon the basis of what it would have cost defendant to maintain complainant at his own house, and not what it may have cost complainant to board. That inasmuch as defendant has, by the absence of complainant, been relieved from the actual expense he would have incurred for his maintenance, if he had remained with him, he shall be required to account to him for that amount.
*644 Decree of Chancellor affirmed, with this modification thereof as to the account ordered. The costs in this Court, and the Court below, will be paid by complainant. •